UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

JAY PRESLEY and TAMMY PRESLEY,
Husband and Wife,

       Plaintiffs

      v.

BOARD OF SCHOOL DIRECTORS OF
RANKIN SCHOOL DISTRICT No. 98,
an Illinois Local Governmental Entity;
STEVEN K. JOHNSON, Superintendent
of Rankin Elementary School District No.
98, in His Individual Capacity; DEBBIE
LOWMAN, President of the Board, in her
Individual Capacity; JULIA NELMS,
Secretary of Board, in her Individual
Capacity; TIMOTHY GAY Board Member, in
his Individual Capacity; LYLE SECREST,
Board Member, in his Individual Capacity ;

       Defendants

Case No. 14-1055

Judge James E. Shadid
Magistrate Judge Tom
Schanzle-Haskins

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

Now come the Plaintiffs, Jay Presley and Tammy Presley, Husband and Wife, by

Richard L. Steagall, their attorney, and for Plaintiffs' Response to Defendants' Motion

for Summary Judgment states:

## I.
## Introduction

Jay Presley was a Member of the Board of Education of the Rankin School

1

District since 2011.  His wife, Tammy Presley, was employed as the School Secretary from 2007 until the Board on charges from the Superintendent fired her on December 2, 2013. The Superintendent suspended her and the Board fired her for forwarding a parent's letter to the Board about the Band which the parent did not believe the Board had received.

Tammy Presley and her Board Member husband Jay Presley bring an action for retaliation against Jay for his speech, which is a violation of the First Amendment right of intimate association. See *Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir.1999)(spouse's claim that adverse action was taken in relation for conduct of the spouse should be analyzed as a First Amendment claim of intimate association)

**II.**
**Response to Statement of Undisputed Facts**

**A.      Undisputed Facts**

1.      Plaintiff admits this matter.

2.      Plaintiff admits this matter.

3.      Plaintiff admits this matter.

5.      Plaintiff admits this matter.

6.      Plaintiff admits this matter.

7.      Plaintiff admits this matter.

8.      Plaintiff admits this matter.

9.      Plaintiff admits this matter.

10.      Plaintiff admits this matter.

11.     Plaintiff admits this matter.

12.     Plaintiff admits this matter.

13.     Plaintiff admits this matter.

16.     Plaintiff admits this matter.

17.     Plaintiff admits this matter.

18.     Plaintiff admits this matter.

19.     Plaintiff admits this matter.

20.     Plaintiff admits this matter.

21.     Plaintiff admits this matter.

22.     Plaintiff admits this matter.

23.     Plaintiff admits this matter.

24.     Plaintiff admits this matter.

25.     Plaintiff admits this matter.

26.     Plaintiff admits this matter.

27.     Plaintiff admits this matter.

28.     Plaintiff admits this matter.

29.     Plaintiff admits this matter.

30.     Plaintiff admits this matter.

31.     Plaintiff admits this matter.

32.     Plaintiff admits this matter.

33.     Plaintiff admits this matter.

34.    Plaintiff admits this matter.

37.    Plaintiff admits this matter.

38.    Plaintiff admits this matter.

39.    Plaintiff admits this matter.

40.    Plaintiff admits this matter.

41.    Plaintiff admits this matter.

43.    Plaintiff admits this matter.

44.    Plaintiff admits this matter.

**B.    Disputed Facts**

3.    Plaintiff admits this matter but states the vote was 4-2. Tanya Swearingen and Leonard Kasinger voted not to terminate Tammy Presley. Debbie Lowman, Julia Nelms, Timothy Gay, and Lyle Secrist voted in favor of terminating Tammy Presley's employment. PltfEx:1 12/2/13 Board Minutes.

**C.    Immaterial Facts**

29.    Plaintiff admits this matter but states her complaint against Carole Delahunt is immaterial.

30.    Plaintiff admits this matter but states her complaint against Carole Delahunt is immaterial.

42.    Plaintiff admits this matter, but states it is immaterial. Evidence is obtained and produced by attorneys and circumstantial evidence is motive cases is proven by the attorney, not the client.

4

45.     Plaintiff admits this matter, but states it is immaterial. Evidence is obtained and produced by attorneys and circumstantial evidence is motive cases is proven by the attorney, not the client.

**D.     Additional Material Facts**

1.     Superintendent Johnson submitted his resignation effective the end of the 2013-14 school year at the September 26, 2016 meeting of the Board. ECF #17:¶ 14 [Defs' Answer including Amended Complaint allegations].

2.     Superintendent Johnson after stating his resignation said that either Jay Presley or Tammy Presley he stated his belief that either Jay Presley or Tammy Presley should be required to resign their position because there was a conflict between Jay Presley's interest as a Board member and Tammy Presley's interest as a non-union employee of the office staff. PltfEx:2: Jay Presley Dec; See also ECF 28-3; TammyPresleyDep:138-39.

3.     Jay Presley started on the Rankin School Board in the spring of 2011. ECF 28-3: Tammy PresleyDep:9. Tammy Presley had been working on School Secretary since 2007. Id:13. There were no discussions among the Board about Jay receiving information Tammy acquired as School Secretary. Id:13-15. Her job goal was to provide a smooth, friendly, effective, and efficient school office. Id:52.

4.     The Superintendent and Board President prepared an agenda for School Board Meetings. Jay believed he and other Board Members could raise matters at the Meeting that were not on the agenda. Id:18. A lot of discussions before the incident

(Tammy's termination) were disbursed by the Board that were not on the agenda. Id.

5.      Tammy did tell Jay about problems with the Superintendent in June, 2013, but Jay does not recall what they were. Id:19. The Board Members received a lot of complaints about the administration, but no one other than Tammy was fired. Id:20-21.

6.      Jay knew of the frustration that Tammy and her co-worker, Tracey Dodson. ECF 28-3:Tammy PresleyDep:178-80; 28-4. Jay had a meeting with Superintendent Johnson in the fall of 2012 about the contentious relationship Carole Delahunt had with Tammy and other staff members. ECF:28-4:Jay PresleyDep:25. No one got along with Carole Delahunt. Id:24-25. Jay went because he was the best person to address conflict among the staff with Superintendent Johnson and ask how do we get these people working together.  ECF28:4::Jay PresleyDep:25-26.  When asked whether he was there for School Board business or his wife, Jay said he was there not on official School Board business, but because it was best for everyone. Id:26.  Other employees who complained about Carole Delahunt were Lisa Thompson, Michele Cleeton, and Rachel Lamberson. They contacted Jay to meet with the Superintendent about the problems with Carole Delahunt. Id:28.  It was a matter for the Superintendent, not the Board. Jay informed the Superintendent of the conflicts and told him to take care of it. Id:27.

7.      When a Letter of Direction was prepared by Superintendent Johnson against Tammy Presley, Jay was aware of it and told Board President Debbie Lohman that he understood the purpose for reprimanding an employee from going around the

administration, it is equally important to understand why it occurred. Id:31.

8.     Tammy sent an e mail to the Board members of a complaint by a teacher,
Ms. Lamberson and her as a parent, about requiring students to purchase planners
themselves. She and the teacher told the Superintendent and he did not change, so as a
parent Tammy forwarded it to the Board. ECF:28-3:TammyPresleyDep: 114-17. She
received an August 30, 2013 Notice of Direction from Superintendent Johnson for
sending that which was that she would be subject to discipline. ECF:28-
3:TammyPresleyDep: 117;DepEx:11.  Tammy understood that if she received
information during the work day she would raise matters with the Superintendent or
appropriate administration prior to raising it with the Board. Id:122.

9.     Tammy Presley's understanding was that if she had a conversation with a
parent outside of work who tells her she had not heard back from a communication
they had to the School Board, then as a courtesy, Tammy would reminding the Board of
the parent's lack of response. Id:122-23.  Sarah Cummins had sent an e mail to the
School Board twice about band and not heard a response. She told Tammy at a Little
League baseball game. Id: 124-126.

10.    Tammy told Sarah Cummins  there may be something wrong with the
server so send it to me and I will send it to the Board. 28-3:Tammy PresleyDep:124-25.

11.    Sarah Cummins had sent a letter to Debbie Lowman, President, Jay, and
the other Board members attaching Sarah Cummins letter. Id:126. Cummins sent to the
Board on August 21. Id:129.

12.     The Sarah Cummings e mail was sent on August 21, 2013 before the

August 30, 2013 Letter of Direction. ECF:28-3:TammyPresleyDep: 117;DepEx:11.

Tammy re-sent the email to Board at Sarah Cummings request her e mail on September

6, 2013. Id:T PressleyDepEx:12.

13.     The Superintendent issued a November 26, 2013 Memorandum

suspending Tammy Presley without pay until the December 2, 2013 Board meeting.

The Memorandum does not state the reason for suspension without pay. ECF:Defs'

Mot:28-10: Tammy PresleyDepEx:21.

14      The Memorandum told her she could address the Board on December 2,

2013. 28-3 Tammy Presley Dep:180-81.  She addressed the Board on December 2, 2013.

and presented a letter stating she forwarded an email to the Board a parent had sent to

the office. Id:188.

15.     The Board terminated Tammy's employment for sending the email Sarah

Cummins sent to the Board at the office on to the Board. 28-3 Tammy PresleyDep:191.

### III.
### Argument

**A.**     ***Gross v. FBL Financial Services* Held But For Causation Must be Proved
in an Age Discrimination in Employment Action Because Congress Had
Not Amended That Statute to Include Mixed Motive Liability as it Did
Title VII; It Did Not Alter the Extended Protection of Free Speech
Provided in the Motivating Factor Test of *Mt. Healthy City Board of
Education***

A plaintiff asserting a First Amendment retaliation claim must prove the speech

was a motivating factor in employment action.  If the plaintiff proves that, the burden

8

shifts to the defendant to prove it would have taken the same employment action had it not been for the speech. Seventh Circuit Pattern Instruction No. 6.01; *Mt Healthy City School District Board v. Doyle*, 429 U.S. 274, 287 (1977).  Defendants suggest that this case has been overruled. *Gross v. FBL Financial Services*, 557 U.S. 167, 129 S.Ct. 2343 (2009). *Gross* held the failure to amend the Age Discrimination in Employment Act to include the mixed motive language of Title VII required age discrimination be the but for cause of the plaintiff's damages. 557 U.S. at 177.

Defendants do not explain how that statutory interpretation decision alters the extend free speech protection given public employees in *Mt. Healthy*. There is language in the opinion stating but for causation is required unless a statute provides otherwise. *Fairley v. Andrews*, 528 F.3d 518, 545-26 (7th Cir. 2009).  The ruling – which was not essential to the holding – presents significant problems. lower federal court may depart from Supreme Court precedent only in "one of those rare cases where circumstances 'have created a near certainty that only the occasion is needed for the pronouncement [by the Supreme Court] of the doom' of an obsolete doctrine." *Levine v. Heffernan*, 864 F.2d 457, 461 (7th Cir.1988). *Gross* was a statutory interpretation issue, while the validity of the *Mt. Healthly* motivating factor test is the extent to which First Amendment speech is protected. The court must follow the Seventh Circuit pattern jury instruction and the *Mt. Healthy* motivating factor standard of liability until there is an indication the Supreme Court intends to extend *Gross* beyond statutory interpretation of whether mixed motive proof is sufficient to prove a violation of the discrimination statutes.

9

**B.     There is a Triable Issue of Fact on Whether Tammy Presley's Employment Was Terminated Because She Was the Spouse of Jay Presley, a School Board Member Who Had Scrutinized School Affairs**

Superintendent Johnson informed the Board of his resignation effective at the end of the school year at the September 26, 2013 Board Meeting. He then said  said that either Jay Presley or Tammy Presley he stated his belief that either Jay Presley or Tammy Presley should be required to resign their position because there was a conflict between Jay Presley's interest as a Board member and Tammy Presley's interest as a non-union employee of the office staff. PltfEx:2: Jay Presley Dec; See also ECF 28-3; TammyPresleyDep:138-39.

That was the September 16, 2013 meeting. The November 6, 2013 Board Meeting considered Tammy Presley's complaint against Carole Delahunt and Delahunt's complaint against her. It issued a Notice of Direction finding Tammy at fault. 28-3:Tammy Presley Exhibits 19 & 20; quoted in Defendant's Memorandum in Support of Motion for Summary Judgment. ECF:28:9-10:¶ 35. The Board did not consider or mention the three other employees who had difficult with Carole Delahunt. 28-4:JayPresleyDep: 28.

Tammy sent an e mail to the Board members of a complaint by a teacher, Ms. Lamberson and her as a parent, about requiring students to purchase planners themselves. She and the teacher told the Superintendent and he did not change, so as a parent Tammy forwarded it to the Board. ECF:28-3:TammyPresleyDep: 114-17. She received a Notice of Direction from Superintendent Johnson for sending that which was

10

that she would be subject to discipline. ECF:28-3:TammyPresleyDep: 117.  Tammy

understood that if she received information during the work day she would raise

matters with the Superintendent or appropriate administration prior to raising it with

the Board. Id:122.

      Tammy Presley's understanding was that if she had a conversation with a parent

outside of work who tells her she had not heard back from a communication they had

to the School Board, then as a courtesy, Tammy would remind the Board of the parent's

lack of response. Id:122-23.  Sarah Cummins had sent an e mail to the School Board

twice about band and not heard a response. She told Tammy at a Little League baseball

game. Tammy received and sent it on August 21st before the August 30, 2013 Letter of

Direction from the Superintendent requiring things to be routed through him. She again

sent it on September 6, 2013 to the Board at Sarah Cummings' email request.

      The Superintendent issued a November 26, 2013 Memorandum suspending

Tammy Presley without pay until the December 2, 2013 Board meeting.  The

Memorandum does not state the reason for suspension without pay. ECF:Defs' Mot:28-

10:  Tammy sent it to the email addresses of Debbie Lowman, President, Jay, and the

other Board members attaching Sarah Cummins letter. Id:126. Cummins sent Tammy

the letter at work and she forwarded it on to the Board on August 21. Id:129.

      The Sarah Cummings e mail was sent on August 21, 2013 before the August 30,

2013 Letter of Direction. ECF:28-3:TammyPresleyDep: 117;DepEx:11.  Tammy re-sent

the email to Board at Sarah Cummings request her e mail on September 6, 2013. Id:T

PressleyDepEx:12.

The Superintendent issued a November 26, 2013 Memorandum suspending Tammy Presley without pay until the December 2, 2013 Board meeting. The Memorandum does not state the reason for suspension without pay. ECF:Defs' Mot:28-10: Tammy PresleyDepEx:21. Tammy addressed the Board on December 2, 2013. and presented a letter stating she forwarded an email to the Board a parent had sent to the office. Id:188. The Board terminated Tammy's employment for sending the email Sarah Cummins sent to the Board at the office on to the Board. 28-3 Tammy PresleyDep:191.

The Superintendent stated Jay Presley should not serve on the Board while his wife, Tammy, was School Secretary on September 16, 2013. On December 2, 2013, the Board ratified his recommendation on the Superintendent's charge that Tammy's employment should be terminated because she sent a parent's letter to the Board at the parent's request because the Board had not received it. The Board are the policy making agents of the Rankin School District. They ratified the termination of Tammy Presley's employment for her speech at the request of the Superintendent. The Members and the Rankin School District are liable for the decision of its policy making agents. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

**C.     There Was No Legitimate Governmental Interest in the Rankin School District's Decision to Terminate Tammy Presley's Employment Because Jay Presley Her Spouse Was a Board Member**

The Supreme Court and the Seventh Circuit have held unmarried couples have a Constitutional right to intimate association. See *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct.

2472 (2003), *Christenson v. County of Boone, IL*, 483 F.3d 454, 463 (2007). There is no doubt the right to intimate association under the U.S. Constitution also extends to married couples. Terminating an employee based on who she is married to interferes with a marriage. This is because if she was not married or divorced her husband, then she would be able to keep her job.

The Presley's claim sustained against a motion to dismiss was there right of intimate association was interfere with because she was terminated from employment by the actions on the Board of Education of her spouse.

(1) The first method of analysis is the existence of a governmental interest. There is no governmental interest in Tammy Presley's employment termination because of her husband was a Board member. Whether Plaintiffs' rights are fundamental and subject to strict scrutiny, or compelling interests subject to rational basis review, plaintiffs claims prevail. See *Menora v. Illinois High School Assoc.*, 527 F.Supp 637, 644-46 (N.D. Ill. 1981)(Shadur J). By definition, the absence of any governmental interest means the Defendants' conduct was arbitrary in the constitutional sense.

C.   *Garcetti v. Ceballos* **Does Not Apply Because Jay Presley is a Board Member Who Makes Legislative and Administrative Policy and is Not An Employee of the School District**

A legislator has greater first Amendment rights than executive employees determined under the familar balancing test for public employee speech. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731 (1968); *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684 (1983)(First Amendment protection of public employee speech balances

interest of employee as citizen in speech on matters of public concern against State's interest as an employer in efficiency of public services). A public employee who speaks on matters relating to his official duties is speaking as an employee subject to discipline by his State employer and does not have First Amendment protection. *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951 (2006).

Jay Presley is a member of the Board of Education who makes the education policy of the Rankin School District. See *National Brick Co. v. Lake County*, 9 Ill.2d 191, 137 N.E.2d 494, 497 (1956)(County Board makes legislative policy of County); *East St. Louis School Dist. No. 189 Bd. of Educ. v. East St. Louis School Dist. No. 189 Financial Oversight Panel*, 349 Ill.App.3d 445, 811 N.E.2d 692, 698  (2004)(Financial Oversight Panel was exercising legislative power in rejecting proposed contract with architectural firm).

The P*ickering/Connic*k test of free speech is for executive employees of the government. Pickering was a school teacher who alleged he was terminated by the Board of Education for speech. 391 U.S. at 567-68. *Connick* was an Assistant District Attorney. making that claim. 461 U.S. at 567-68. Ceballos was also an Assistant District Attorney. *Garcetti*, 547 U.S. 409.

Judge Crabb has held a spouse is able to bring a First Amendment intimate association claim for retaliation taken against him for his spouse's speech. *Cockroft v. Moore*, 638 F.Supp.2d 1024, 1028 (W.D.Wis. 2009) *relying upon Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir.1999)(spouse's claim that adverse action was taken in relation for conduct of

14

the spouse should be analyzed as a First Amendment claim of intimate association);

*Singleton v. Cecil*, 133 F.3d 631, 635 (8th Cir.1998) (affirming district court's decision to

grant defendant's motion for summary judgment on plaintiff's claim that his termination

as police officer on basis of wife's conduct did not violate his First Amendment right to

intimate association), *aff'd en banc in pertinent part*, 176 F.3d 419, 423 (8th Cir.1999).

> *Adler* correctly resolves the issue.

> The law has substantially progressed since the days when Mr. Bumble's solicitor informed him that "the law supposes that your wife acts under your direction." *For purposes of this case, we need only rule that the activity of Adler's wife in suing state officials for herself and another plaintiff because of employment discrimination in her department could not reasonably be found to justify his discharge. Wherever the line might be drawn that separates a state's permissible and impermissible actions against an employee based on a spouse's conduct, Adler's discharge because of his wife's lawsuit is well across the line.* A relationship as important as marriage cannot be penalized for something as insubstantial as a public employer's discomfort about a discrimination lawsuit brought by an employee's spouse. 185 F.3d at 44.

> Here Presley's right of free speech as a legislator is First Amendment protected.

"[T]he First Amendment in a representative government requires that legislators

be given the widest latitude to express their views on issues of policy." *Bond v. Floyd*,

385 U.S. 116, 87 S.Ct. 339 (1966)(exclusive of Representative Julian Bond from the

Georgia Legislature for statements in opposition to the Vietnam War violated First

Amendment protection of free speech).

### D.      The Illinois Unemployment Insurance Act Precludes Any Res Judicata and Estoppel Result From the Decision of the Illinois Department of Employment Security

Title 28 U.S.C. § 1738 requires a federal court to give full faith and credit to a

judgment of a State court. Defendants rely on a decision of the Illinois Department of

15

Employment Security, so the law of Illinois determines the res judicata effect to be given

that judgment. See *Jones v. City of Alton, Ill.*, 757 F.2d 878, 885-86 (7th Cir. 1985).

The Illinois Unemployment Insurance Act contains a broad prohibition on using

the information from or the findings of the Illinois Department of Employment Security

in any other proceeding. 820 ILCS 405/1900. The information obtained from any

individual shall be confidential and cannot be used in any court or other proceeding.

820 ILCS 405/1900 (A).

> No finding, determination, decision, ruling or order issued pursuant to this Act
> shall be admissible or used in evidence in any action...nor shall it
> constitute res judicata...".

The statute precludes reliance on a decision of the Department of Employment Security

as res judicata on any issue in a later action. This was provision was added to the Illinois

Unemployment Insurance Act on the basis of a Department of Labor recommendation

that unemployment hearings by simple proceedings and that States amend their statutes

to prevent estoppel effect to avoid lengthy defenses in the hearing. *Council v. Village of

Dolton*, 764 F.3d 746, 749-50 (7th Cir. 2014)(holding unemployment hearing and Illinois

circuit court and appellate court review of that hearing are entitled to no estoppel effect

in a federal Section 1983 action).

## IV.
## Conclusion

Superintendent Johnson must be taken at his word. Tammy Presley should not be

School Secretary while her spouse, Jay Presley is on the Board. The terminating of

employment for the helpful act of forwarding a parent's letter to the Board is sufficient

16

evidence of pretext which must be resolved by the jury.

Respectfully submitted,

s/ Richard L. Steagall
RICHARD L. STEAGALL,
Attorney for Plaintiffs

## LOCAL RULE 7.1 (D) STATEMENT

Richard L. Steagall, under Local Rule 7.1 (D) state the word count on his Wordperfect 6 software including the Statement of Facts is 3900 words.

s/ Richard L. Steagall
RICHARD L. STEAGALL

| **CERTIFICATE OF SERVICE** |
| --- |

I hereby certify that on **November 8, 2016**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ms. Shari D. Goggin-Ward
Law Offices of Cozzi & Goggin-Ward
27201 Bella Vista Parkway, Suite 410
Warrenville, Illinois 60555-1619
Tel: (630) 393-2145
WarrenvilleLegal@LibertyMutual.com

s/ Richard L. Steagall
RICHARD L. STEAGALL

RICHARD L. STEAGALL
Steagall Law Offices
416 Main Street, Suite 815
Commerce Building
Peoria, IL 61602
309-674-6085
Fax 309-674-6032
nicsteag@mtco.com