UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JAY PRESLEY and TAMMY PRESLEY,   )
                                  )
            Plaintiffs,           )
                                  )
       v.                         )   Case No. 14-1055
                                  )
BOARD OF SCHOOL DIRECTORS OF      )
RANKIN SCHOOL DISTRICT NO. 98,    )
et al,                            )
                                  )
            Defendants.           )

## ORDER AND OPINION

This matter is now before the Court on Defendants' Motion [28] for Summary Judgment. For the reasons set forth below, Defendants' Motion [28] is GRANTED.

### BACKGROUND

The following background is taken from Defendants' Statement of Undisputed Material Facts. See ECF Doc. 28. Plaintiff Tammy Presley was employed as a secretary at Rankin School District No. 98 (the "School District") from 2007 until her involuntary termination on December 2, 2013. Plaintiff Jay Presley is Tammy Presley's husband and an elected member of Defendant Board of Education of Rankin School District No. 98 ("the Board"). He was elected to a four-year term on the Board in 2011 and reelected in 2016. Plaintiffs brought this action under Section 1983 and Section 9-102 of the Illinois Tort Immunity Act, naming as Defendants the Board, Superintendent Steven Johnson, Board President Debbie Lowman, Board Secretary Julia Nelms, and Board members Timothy Gay and Lyle Secrest.[1] Jay Presley alleges that his wife Tammy's

---

[1] The Superintendent and the members of the Board who voted to terminate Tammy are being sued in their individual capacity.

termination was in retaliation for exercising his constitutional right to free speech in an email he sent to the Board regarding the School District's Administration and its use of funds. Plaintiffs further allege that the Defendants' conduct infringed on their liberty interest of intimate association with their spouse. ECF Doc. 28, at ¶¶ 1-7.

Tammy Presley's supervisors at the School District were the Principal and the Superintendent, Steven Johnson. The first incident Tammy recalls that is relevant to her termination was on May 3, 2013, when she verbally complained to Superintendent Johnson that Carole Delahunt, the school bookkeeper, was an "adult bully" and used profane language at work. Tammy speculated that Superintendent Johnson did not look into her complaint, but admitted that she never followed up with him either. *Id*. Tammy received a "great evaluation and raise" from Superintendent Johnson on June 13, 2013. On June 18, 2013, Tammy exchanged emails with Delahunt and Johnson regarding book fees that were waived for Delahunt's nephews without proper documentation. On August 1, 2013, Superintendent Johnson issued a notice to all office employees, including Tammy, advising that "[o]n the occasion(s) when parents, guardians, or community members contact our office, all received issues, concerns or complaints are to be directed to my office. I will then direct the received issues, concerns or complaints as needed." *Id*. at ¶¶ 8-16.

On August 19, 2013, after first raising the issue with Superintendent Johnson, Tammy sent an email to the Board members about Tammy and another teacher's concern that students would be required to purchase planners. See ECF Doc. 34, at ¶ 8. On August 30, 2013, Superintendent Johnson issued a Memorandum to Tammy, titled "Re: Notice of Direction," stating that Tammy had admitted to forwarding an email chain on August 19, 2013, from her

2

work/school email account to members of the Board without notifying the Superintendent first.

Specifically, the letter stated:

> In my conversation with you, I communicated that all school concerns that are brought to your attention should be shared with the Superintendent prior to a concern being raised with the Board of Education. This policy is designed to resolve issues at the lowest possible level. If issues are still not resolved to the satisfaction of all parties, concerned parties are free to address the issue through the chain of command up to the Board of Education.
>
> If you receive information during the work day, through district email, or which otherwise pertains to school business which suggests that a school issue needs to be addressed, you are directed to raise the matter with me or other appropriate administrative personnel prior to raising the matter with members of the Board of Education. In short, you are directed to use the chain of command to address all school issues. Failure to follow this directive may result in discipline up to and including discharge from employment.

In response, Tammy wrote the following on the Memorandum:

> 8/30/13- I disagree w/this statement. Action by teacher had gone through proper chain + situation was not handled before I sent to Board. As parent I talked to teacher and she or I did not want to purchase assignment notebooks from our personal accounts.
>
> ECF Doc. 28, at ¶¶ 17-19.

On September 5, 2013, Tammy Spoke to Sarah Cummins at a little league baseball game. Cummins told Tammy that she had twice sent an email to the Board about the band program but had not yet heard a response. Tammy asked Cummins to forward her the email and she would make sure to pass it along to the Board. At 10:16 p.m. on September 5, 2013, Tammy emailed Board President Lowman the following message:

> Hello-
> I was talking to a Spring Lake parent tonight and I was very upset to hear that she had sent a letter to our School Board President, Debbie Lowman about the band program and she hadn't heard a word back from her. As an employee of the school many parents come to me with questions and comments. I asked Mrs. Cummings forward the letter to me and I would forward to ALL board members. I think that it is very inconsiderate not to respond to a parent who has their time to type a letter up and send it to our school board. Don't know how many other

3

> items are not being shared with the other school board members, but I believe the board is to operate as a unit, the board is not one individual. . . .

At 10:17 a.m. on September 6, 2013, Tammy forwarded the email from Cummins to all members of the Board. She also exchanged several emails with President Lowman, who reminded Tammy of the proper chain of command. *Id.* at ¶¶ 21-24.

On September 16, 2013, Jay Presley sent an email to Board President Lowman setting forth a list of his concerns to be addressed at the next Board meeting. Jay forwarded this email to Tammy's personal email account on December 3, 2013, the day after she was terminated. Jay's email raised many questions, including: Superintendent Johnson's reprimand of an "employee" for "going around [the] administration with an issue," bussing schedules, book fee collection practices, and the nature of the bookkeeper's employment. Tammy testified that she was aware of some portions of the email before it was sent. *Id.* at ¶¶ 25-28.

On September 25, 2013, Tammy filed a written complaint against Delahunt for bullying and making threatening remarks, which she sent to the Board after discussing it with Superintendent Johnson. On September 30, 2013, Tammy sent a request to the Board for a special hearing on her complaint against Delahunt. Shortly thereafter, Delahunt filed her own complaint against Tammy. Upon learning of Delahunt's complaint, Tammy sent an email to the Board and Superintendent Johnson on October 7, 2013, wherein she accused Johnson of having "a personal vendetta against" her. In the same email, she questioned whether the Board was taking her complaint seriously, remarking that "Sandy Hook School didn't think it [bullying] was serious either." On October 18, 2013, Board President Lowman emailed Tammy to inform her that her complaint would be considered at the next Board meeting on October 23, 2013. *Id.* at ¶¶ 29-34.

On November 6, 2013, the Board issued a "Notice of Direction" memorandum to Tammy, stating:

> This Notice of Direction follows receipt of a complaint regarding your behavior and Board consideration of the matter at a meeting held on October 23, 2013. Specifically, the Board of Education has determined that you have, on multiple occasions, made comments and provided non-verbal communication to persons attempting to meet with Carole Delahunt in her office which have had the effect of discouraging these persons from doing so in an attempt to ostracize Ms. Delahunt from staff and others in the school community. The Board of Education finds these actions unprofessional and directs you to refrain from any such conduct in the future . . . .
> In short, you are direct to, at all times in the future, conform your conduct in accordance with these expectations. Failure to follow this directive may result in discipline up to and including discharge from employment.

Tammy denied receiving the document before she was terminated, but stated that the contents of the memorandum tracked remarks she received from the Board at the meeting on October 23, 2013. On November 15, 2013, Superintendent Johnson issued another written direction to Tammy and her colleague Trudy Dodson prohibiting them from using or displaying their "WTF" list in the office. *Id*. at ¶¶ 35-36.

On November 26, 2013, Superintendent Johnson met with Tammy and gave her another memorandum documenting her suspension without pay until December 2, 2013, when the Board would consider disciplinary action on the recommendation of the Administration. At the December 2 meeting, Tammy read her response to the November 26 memorandum to the Board. In her response, Tammy stated that she spoke with Superintendent Johnson and confirmed that the September 5 email forwarding Cummin's concerns was the only reason for her suspension and possible termination. No reference was made to Jay Presley's email. Superintendent Johnson presented a written document to the Board for consideration at the December 2 meeting, wherein he recommended that Tammy be terminated for numerous reasons, including her failure to

follow the chain of command. Tammy was notified of her termination in a letter dated December 3, 2013. ¶¶ 37-41.

Plaintiffs' response lists only one fact from Defendants' Motion for Summary Judgment as "disputed," but sets forth 15 Additional Material Facts. Plaintiffs assert that Superintendent Johnson resigned at the Board meeting on September 26, 2013, and further allege the following:

> 2. Superintendent Johnson after stating his resignation said that either Jay Presley or Tammy Presley [sic] should be required to resign their position because there was a conflict between Jay Presley's interest as a Board member and Tammy Presley's interest as a non-union employee of the office staff. PltfEx:2 Jay Presley Dec; See also ECF 28-3; TammyPresleyDep:138-39.

ECF Doc. 32-1, at 5.

The remaining portions of Plaintiffs' Additional Material Facts largely recite the undisputed facts in Defendants' motion.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322-23. However, "[t]he burden on the non-movant is not onerous." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). Rather, the non-movant "need only come forward with appropriate evidence demonstrating that there is a pending dispute of

6

material fact" and "may rely on affidavits or any other materials of the kind identified in Rule 56(c)." *Id.*

## ANALYSIS

Plaintiffs' Amended Complaint asserts three claims: (1) Jay Presley's First Amendment retaliation claim, (2) Jay Presley's First Amendment intimate association claim, and (3) Tammy Presley's First Amendment intimate association claim. ECF Doc. 13. Tammy Presley does not raise a First Amendment retaliation claim for her speech.

*(1) Jay Presley's First Amendment Retaliation Claim*

Plaintiffs' first claim alleges that Tammy Presley was suspended and later terminated in retaliation for Jay Presley's protected speech. A public employee's § 1983 claim for retaliation in violation of First Amendment rights is evaluated under a three-step analysis stemming from the Supreme Court's decision in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). First, the employee's speech must be constitutionally protected. Second, "the plaintiff must establish that the speech was a substantial or motivating factor in the retaliatory action." Third, the defendant may show that "the same action would have been taken in the absence of the employee's protected speech." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004).

*(a) Whether Jay Presley's Speech was Constitutionally Protected*

The first issue is whether Jay Presley's email to the Board was constitutionally protected speech. "Whether a public employee's speech is constitutionally protected depends on 'whether the employee spoke as a citizen on a matter of public concern.'" *Brown v. Chicago Board of Education*, 824 F.3d 713, 715 (7th Cir. 2016) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). An employee does not speak as a citizen when he makes statements pursuant to his official duties. *Garcetti*, 547 U.S. at 421. Additionally, "the interest of the employee as a citizen

7

in commenting upon matters of public concern" must "outweigh[] the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees." *Nagle v. Vill. Of Calumet Park*, 554 F.3d 1106, 1123 (7th Cir. 2009) (quoting *Sigsworth v. City of Aurora*, 487 F.3d 506, 509 (7th Cir. 2007)).

Here, Jay Presley's email was in response to the Board president's request for agenda items for the next Board meeting. It set forth a list of his questions and concerns, including the notice of direction "an employee" (Tammy) received for "going around the administration" and raising questions to the Board about the planners, scheduling of busses, residency requirements, fees, class schedules, and the math program. At the conclusion of the email, Jay writes: "[a]s a board member, I am not here to manage our administration but to be more informed about how we conduct business . . . . It is our board responsibility to hold individuals 'accountable' for managing our school . . . ." [T.Presley Dep. Ex. 13].

Viewing the email as a whole, it appears that Jay Presley's speech was "pursuant to his official duties" as a Board member, rather than "as a citizen." *Brown*, 824 F.3d at 715. Under *Garcetti*, public employees speaking pursuant to their official duties are speaking as employees, not citizens, "and thus are not protected by the First Amendment regardless of the content of their speech." *Spiegla*, 481 F.3d at 965. In other words, because Jay Presley was speaking as a Board member, his speech was not protected by the First Amendment; thus, the Court need not determine whether his speech was a matter of public concern nor balance his interest against that of the School District.

Plaintiff asserts that *Garcetti* is inapposite because Jay Presley is an elected Board member tasked with making the education policy for the District, rather than a "public employee." Seventh Circuit case law distinguishes public employees from policymaking officials

8

in the context of political expression. *Fuerst v. Clarke*, 454 F.3d 770, 772 (7th Cir. 2006) ("Public officials do not violate the First Amendment when they deny for political reasons appointments or promotions to jobs that involve the making of policy or the giving of confidential policy-related advice to a policymaker."); *Riley v. Blagojevich*, 425 F.3d 357, 359 (7th Cir. 2005) (public officials cannot be fired based on political affiliation "unless the nature of the job makes political loyalty a valid qualification"). However, the distinction does not support Plaintiffs' argument because public officials are given *wider* latitude to base employment decisions on otherwise protected expression (political affiliation) when the job involves making of policy or giving confidential advice. *Fuerst*, 454 F.3d at 772. Here, Plaintiffs do not claim that Tammy Presley was fired because of her or Jay's political affiliation, so the distinction is immaterial. Thus, Plaintiffs have failed to establish that Jay Presley's speech was constitutionally protected as required under the first prong of *Mt. Healthy's* First Amendment retaliation analysis.

  *(b) Jay Presley's Speech was not a Substantial or Motivating Factor in the Retaliatory Action*

  Assuming *arguendo* that Jay Presley was speaking "as a citizen," and further that his speech was addressing "a matter of public concern" *Connick v. Myers*, 461 U.S. 138, 147 (1983), that outweighed the State's interest in efficiency, *Sigsworth*, 487 F.3d at 509, Plaintiff cannot establish the second prong of *Mt. Healthy's* First Amendment retaliation analysis—that the speech was a substantial or motivating factor in the retaliatory action. *Spiegla*, 371 F.3d at 935. The only causal connection between Jay's speech and Tammy's termination relates to Plaintiffs' second Additional Material Fact, which alleges that:

> 2. Superintendent Johnson after stating his resignation said that either Jay Presley or Tammy Presley [sic] should be required to resign their position because there was a conflict between Jay Presley's interest as a Board member and Tammy Presley's interest as a non-union employee of the office staff. PltfEx:2 Jay Presley Dec; See also ECF 28-3; TammyPresleyDep:138-39.

9

ECF Doc 32-1, at 5.

In support of this statement, Plaintiff provides two citations: one to a purported declaration by Jay Presley, and one to Tammy Presley's deposition transcript. However, Plaintiffs never filed a declaration by Jay Presley with the Court, even after Defendants' reply brief brought the issue to Plaintiffs' attention.

Nor does the citation to the transcript of Tammy Presley's deposition support Plaintiffs' assertion:

> Q. All right. It says on 9-23 of 2013 Mr. Johnson announces resignation one year early to School Board at meeting. He also states that after reading his resignation letter that he feels that Mr. Presley or Mrs. Presley should have to resign their position. Were you at that School Board meeting?
> A. No.
> Q. Did you learn that from your husband?
> A. Yes. Right here. December 3rd.
> Q. Did you know that before December 3rd of 2013?
> A. Actually I did but not from my husband.
> Q. How did you know it?
> A. Confidential information from School Board meetings. I was given information by other School Board members. I was given information from school staff. I was given information from other parents at different times.
> Q. Well, I'm specifically, referring to where Mr. Johnson announces resignation one year early to School Board at meeting.
> A. Yes.
> Q. Who told you that?
> A. Lynn Kasinger. Oh, actually it was Stacy Stoller because Lynn Kasinger had told her . . . . I thought it was Lynn but Stacy is the one that told me. I don't know where Stacy got her information.
> Q. Was Stacy at the School Board meeting?
> A. No. She's a friend of ours, but I have no idea. We were at a track meet and she told me and I was – I had absolutely no idea.
> Q. And what did she – She told you that at the School Board Mr. Johnson had announced his resignation and that – and that he felt Mr. or Mrs. Presley should have to resign their position?
> A. No, she didn't state all that. She said she heard the good news that he was resigning a year early.
> Q. And who did she get that good news from?
> A. I don't know.

> Q. All right. And how about where Mr. Johnson told the School Board after reading his resignation letter that he felt Mr. Presley or Mrs. Presley should have to resign their position. Did you get that information before December 3rd of 2013?
> A. I don't recall when it was exactly that I heard that statement.
> Q. And who did you hear it from?
> A. Jay.
> Q. And do you know if that was immediately after the School Board? He came home from the School Board and said Mr. Johnson resigned and he feels that one of us should have to resign our position[?]
> A. I don't recall how that came about. And maybe this was actually the first time I heard about it. That's why he sent it to me. To put on my timeline. I don't recall.

ECF Doc. 28-3, at 138-141.

> Q. Okay. As you sit here today is there any other document, testimony, information that you have as – that was cited by anybody before or after you were fired as to a reason as to why you were fired?
> A. No.
> Q. Did it have anything to do with Jay being on the School Board?
> A. No. Nobody said we're going to fire you because Jay's on the School Board. Nobody's verbally came out and said that to me.
> Q. Did it have anything to do with the actions taken by Jay?
> A. Well, we believe so.
> Q. I'm saying do you have any information to support that?
> A. The only information I have is that I'm a good employee. I was marked as a good employee. I followed the rules. I was a good employee for seven years so that's my basis to . . .
> Q. All right. Understood. I understand. But I guess what I'm saying is has anybody written you a letter, told you, given you any information that any of the bases that you were fired is for anything other than what you've testified here to so far today?
> A. Correct.

*Id*. at 198-200.

Likewise, the transcripts from Jay Presley's deposition do not support Plaintiffs' assertion regarding the alleged statement by Superintendent Johnson:

> Q. Do you have any documents or have you spoken to anybody that Tammy was fired because she was married to you?
> A. Do I have any documents?
> Q. Or have you talked to anybody on the School Board or have any evidence that Tammy was fired solely because she was married to you.

11

> A. I don't know if a document exists that would state that.
> Q. Have you ever seen a document that says that?
> A. No.
> Q. Have you ever talked to anybody who told you that?
> A. No.
> Q. Do you have any document or spoken to anybody who have told you that Tammy was fired because you drafted the email to Debbie Lowman on September 16th of 2013. . . ?
> A. No.

ECF Doc. 28-4, at 37.

In order to survive the Defendants' motion for summary judgment, Jay Presley must demonstrate that his speech was a substantial or motivating factor in the decision to dismiss Tammy Presley. *Williams v. Seniff*, 342 F.3d 774, 782 (7th Cir. 2003). The only evidence Plaintiffs offer on this point is Superintendent Johnson's alleged statement that either Jay or Tammy should resign. As noted above, the citations to the record either do not exist (i.e., the unfiled declaration) or do not support (i.e., Tammy Presley's Deposition) that assertion. See Fed. R. Civ. P. 56(e) (failing to properly support or address a fact); Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

Plaintiffs cannot rely on Tammy Presley's deposition testimony because her statements are inadmissible hearsay. "[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions, which . . . are not generally admissible at trial, are admissible in summary judgment proceedings to establish the truth of what is attested or deposed . . . provided, of course, that the affiant's or deponent's testimony would be admissible if he were testifying live." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Tammy's testimony about Superintendent Johnson's purported statement is hearsay because it is an out of court statement offered to prove the truth of the matter asserted, i.e., that Johnson made the comments attributed to him. Fed. R. Evid. 801(c).

The statement is inadmissible because the declarant is alive and available to testify, and none of the exceptions under Fed. R. Evid. 803 apply. And Plaintiffs may not rely on their own deposition testimony to prove the statement made by Johnson because neither Tammy nor Jay had firsthand knowledge of the statement. See *Eisenstadt*, 133 F.3d at 742. Finally, the hearsay statement does not fall under Fed. R. Evid. 807's residual exception because Plaintiffs could have obtained affidavits from or deposed individuals present at the Board meeting when Superintendent Johnson announced his resignation. Thus, Plaintiffs have failed to establish that Jay Presley's speech was protected and have further failed to present any evidence that the decision to terminate Tammy Presley was motivated by Jay's speech.

*(2) Plaintiffs' First Amendment Intimate Association Claims*

"The Court of Appeals for the Seventh Circuit has not addressed retaliation in the context of a spouse's speech, but other courts have recognized such a claim as a violation of the right to intimate association." *Cockroft v. Moore*, 638 F. Supp. 2d 1024, 1027 (W.D. Wisc. 2009) (citing *Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999)); see also *Norman-Nunnery v. Madison Area Technical College*, 625 F.3d 422, 433 (7th Cir. 2010) (reserving the question of whether a public employer's refusal to hire a person because of animosity toward that person's spouse is an actionable constitutional claim). Plaintiffs' intimate association claim fails for the same reasons as Jay Presley's First Amendment retaliation claim—Plaintiffs have failed to provide any evidence that the Defendants terminated Tammy because of her marriage to Jay. *Norman-Nunnery*, 625 F.3d at 433. At best, Plaintiffs have shown that at least some of the Defendants on the Board were aware of Jay's email. However, awareness of Jay's speech is insufficient to show that Defendants were *motivated* by his activities. *Spiegla*, 371 F.3d at 935.

Plaintiffs failed to establish by a preponderance of the evidence a causal link between the contested speech and Tammy's termination. *Spiegla*, 371 F.3d at 941. In other words, Plaintiffs have not presented any evidence to show "a motivating fact in the Defendants' action was retaliation." *Id*. Moreover, Plaintiffs have not shown that Jay Presley's email was protected speech. Because Plaintiffs have failed to make a showing sufficient to establish the existence of an element essential to their case and on which they will bear the burden of proof at trial, Defendants are entitled to summary judgment in their favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## CONCLUSION

For the reasons stated above, Defendants' Motion [28] is GRANTED

This matter is now terminated.

Signed on this 16th day of December, 2016.

s/ James E. Shadid<br>
James E. Shadid<br>
Chief United States District Judge